United States District Court
Eastern District of Michigan

United States of America,

v.

Saif Alsenad,

        Defendant.
_____/

Hon. Linda V. Parker

Case No. 25-20614

## Government's Sentencing Memorandum

From 2021 through 2023, the defendant was then-Inkster Mayor Patrick Wimberly's "second half," his "right, left, feet and hands."[1] Consequently, as the mayor began prioritizing his own enrichment over the needs of the city, he recruited the defendant to facilitate a pay-to-play scheme. Following Wimberly's apprehension by law enforcement, FBI agents asked the defendant about Wimberly's bribery scheme. Instead of coming clean, the defendant lied to agents and claimed he had no knowledge of the crimes Wimberly committed as mayor.

In September 2025, the defendant pleaded guilty to lying to federal agents. The government requests a guideline sentence to reflect the

---

[1] Summer 2022 law enforcement recorded conversation.

1

seriousness of the offense, provide just punishment, and afford adequate deterrence to the defendant and others who are tempted to betray the public's trust in this manner.

I. **Factual & Procedural History**

A. Mayor Wimberly's Pay-To-Play Scheme

Wimberly was elected Mayor of Inkster in 2019. At the time, Inkster was developing vacant city-owned property by selling the land to private investors and developers. In the Fall of 2021, a local investor approached the defendant about buying a vacant 13-acre parcel in Inkster that was owned by the city. The defendant informed the potential investor that Wimberly expected to receive cash bribes in exchange for any assistance Wimberly provided in acquiring the property.

In November 2021, the investor submitted a proposal for the vacant lot to the defendant. The defendant and Wimberly then met with the investor. At the meeting, Wimberly told the investor that the specifics of any eventual deal for the 13-acre parcel needed to go through the defendant. That summer, the defendant met with the investor again and told him that a $50,000 bribe payment to Wimberly would be required before the investor could win the bid. Later that summer, on a call

between the investor, the defendant, and Wimberly, Wimberly said he wanted a 10% cut of the investor's business if he won the bid.

After realizing he was unable to satisfy the demands for cash bribes, the investor withdrew his proposal and introduced the defendant to a new financier for the vacant lot. A series of seven payments followed during which a team of investors paid Wimberly a total of $50,000, with the remaining $50,000 to come when the property was transferred to the new owner. The defendant was not involved in the disbursement of these bribes, nor did he benefit financially from the payments to Wimberly.

B. <u>Wimberly Pleads Guilty and the FBI Meets with the Defendant</u>.

In September 2024, Wimberly pleaded guilty to one count of federal programs bribery. Following Wimberly's plea, FBI agents approached the defendant and asked about the bribery scheme. The defendant denied observing anything "weird" when he worked for Wimberly. He also told agents that during his tenure as Wimberly's chief of staff, none of Wimberly's actions stood out to the defendant as "questionable."

Following this October 2024 meeting, the FBI continued to meet with the defendant. Over the course of several interviews, the defendant eventually disclosed that Wimberly wanted a personal financial benefit

3

from any deal arranged for the property. The defendant also confessed to relaying this information to the initial property investor. Finally, the defendant admitted he knew what he was doing was wrong, but he wanted to impress Wimberly and "boost" his career.

C. <u>Defendant Pleads Guilty and Then Protests His Innocence</u>

On September 24, 2025, the defendant pleaded guilty to a one-count information charging him with making false statements to federal agents. The next day, the defendant posted a lengthy, self-serving message on the internet. In it, he echoed the lie he told the agents in October 2024, specifically stating that when he worked for Mayor Wimberly, he "didn't know about the corruption that was quietly unfolding behind the scenes." (Exh. 1, September 2025 Alsenad Social Media Post).

**II. Guidelines**

The Probation Department calculated a guideline range of zero to six months in prison (8/I). PSR, ¶ 66. The government agrees with these calculations and requests a sentence within the applicable range.

4

**III. Argument**

Title 18, United States Code, Section 3553 details several considerations for the Court when imposing sentence. For the defendant, the most important are the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to promote adequate deterrence. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B). The sentence imposed by the Court should also consider avoiding sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

    A. <u>The Seriousness of Defendant's Crimes, Promoting Respect for the Law, and Providing Just Punishment</u>.

There is no question that the defendant's crimes are serious. And while he did not profit financially from Wimberly's bribery scheme, the defendant facilitated these crimes and helped an elected public official sell influence and abuse the trust of Inkster residents. As he eventually admitted, the defendant knew it was wrong to demand cash to facilitate the sale of city-owned property, but he chose to elevate his desire for Wimberly's admiration, and the elevation of his career over the betterment of the city he claims he was "called" to serve. (Exh. 1, September 2025 Alsenad Social Media Post). For that he should be

5

punished. 18 U.S.C. § 3553(a)(2)(A). A guideline sentence reflects the seriousness of the defendant's conduct while providing just punishment for his crimes.

### B. Affording Adequate Deterrence to Criminal Conduct.

Specific deterrence is an important consideration in every case. Given the defendant's recent social media post in which he retracts his admissions of guilt and knowledge of the bribery scheme, it is unclear what impact, if any, this conviction and sentence will have on deterring the defendant from future criminal conduct. Regardless of the impact on the defendant, however, general deterrence is critical because, unfortunately, corruption of this sort is not an anomaly among elected officials. Consequently, the Court should impose a sentence that is necessary to deter others who may be tempted to engage in similar criminal conduct.

### C. Avoiding Sentencing Disparities Among Similarly Situated Defendants.

Section 3553(a)(6) instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." That subsection "is

6

concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Benson*, 591 F.3d 491, 505 (6th Cir. 2010). A court's careful review of the guideline range "necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007).

While the defendant does not have a charged co-defendant in this case, the Court should consider the 24-month sentence imposed for Wimberly. *United States v. Wimberly*, 23-cr-20562, ECF No. 34, PageID.262. While the defendant did not benefit from the bribery scheme, he was an essential participant in the crime, and for that, he should be punished. And while Wimberly only obtained one-half of the $100,000 he solicited, this sum is significant and demonstrates the comfort and brazenness that characterized the defendant's and Wimberly's criminal demands. A sentence of incarceration would therefore be consistent with Wimberly's criminal conduct and sentence.

## IV.  Conclusion

The government requests a sentence within the applicable guidelines range.

                                              Respectfully submitted,

                                              JEROME F. GORGON, JR.
                                              United States Attorney

                                              */s/Eaton P. Brown*
                                              Eaton P. Brown
                                              Assistant United States Attorney
                                              Eastern District of Michigan
                                              211 West Fort Street, Suite 2001
                                              Detroit, MI 48226
                                              Phone: (313) 226-9100
                                              Email: eaton.brown@usdoj.gov

Dated: February 19, 2026